**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

B & S TRANSPORT, INC., a Ohio
Corporation; RONNIE HARRIS,
an Individual,

   Plaintiffs,

vs.


BRIDGESTONE AMERICAS
TIRE OPERATIONS, LLC, a
Delaware LLC; and BRIDGESTONE
AMERICAS, INC., a Nevada
Corporation,

   Defendants.

_____/

**CASE NO.:   5:13 CV-2793**

**JUDGE**: SARA LIOI



**FIRST AMENDED COMPLAINT**
**FOR DAMAGES AND FOR**
**INJUNCTIVE RELIEF**
**(Filed Pursuant to 07-  -14**
** Court Order)**

**DEMAND FOR JURY TRIAL**
**ENDORSED HEREON**


   COMES NOW Plaintiffs, B & S TRANSPORT, INC., a Ohio Corporation ("B&S

TRANSPORT" or "B&S" herein), and RONNIE HARRIS, an Individual, and pursuant to this

Court's Opinion and Order dated  07-24-2014 (Document # 45), for Claims for Relief against the

Defendants, BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC ("BATO") and

BRIDGESTONE AMERICAS, INC. ("BSA"), allege as follows:

1

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to the Civil Rights Act of 1866, including without limitation, 42 U.S.C., Sections 1981, et seq.; and the United States Constitution, including, without limitation, the Fourteenth Amendment thereof.  Jurisdiction is founded on 29 U.S.C. §§1331 and 1343 (1), (2), (3) and (4), and the aforementioned statutory and Constitutional provisions.

2.      Plaintiffs request that this Court exercise supplemental jurisdiction over the State law claims set forth herein, pursuant to 28 U.S.C., Section 1367a, which provides, in part, that the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  The State law claims include, without limitation, claims for: Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Promissory Estoppel; Tortious Interference With Contract and With Prospective Economic Advantage; Fraud; and For Injunctive Relief.  The claims for relief based on Federal law and the claims for relief based on State law alleged in this Complaint are all based on the same nucleus of operative facts.  Judicial economy, convenience and fairness to the parties will result if the Court assumes and exercises jurisdiction over the claims for relief based State law alleged herein.

3.      Venue is proper in the United States District Court for the Northern District of Ohio, Eastern Division.  Plaintiffs' principal place of business is in this district and the nucleus of the transactions between Plaintiffs and Defendants alleged herein occurred in or near the City of North Canton, County of Stark, and State of Ohio.

## THE PARTIES

4.      Plaintiff B&S TRANSPORT is an Ohio Corporation, a citizen of the United States and of the State of Ohio, with its principle place of business in the City of Navarre,

2

County of Stark, and State of Ohio. At all material times, B&S Transport was doing business as a distributor, franchisee and dealer in tires.

5.     Plaintiff HARRIS is an African-American male, a citizen of the United States of America, residing in Stark County, Ohio.

6.     On information and belief, Defendant, BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC ("BATO") is a Delaware limited liability company, with its principal place of business located at 535 Marriott Drive, Nashville, TN.  At all material times herein BATO was doing business in the State of Ohio and within this judicial district.

7.     On information and belief, Defendant, BRIDGESTONE AMERICAS, INC. ("BSA") is a Nevada corporation with its principal place of business located at 535 Marriott Drive, Nashville, TN.  At all material times herein BSA was doing business in the State of Ohio and within this judicial district.

8.     On information and Belief, BATO and BSA are related entities.  Said related entities may sometimes be collectively referred to herein as "the Bridgestone Family".

9.     On information and belief, the actions of each of the Defendants, in engaging in the wrongful acts referred to herein alleged, were authorized, ratified and approved by the officers or managing agents of each of said Defendants, respectively, and following each of the specified wrongful acts complained of herein, officers or managing agents of each of the said corporate Defendants ratified such conduct.

10.     At all material times herein, each of the Defendants named herein acted in concert and was the co-conspirator of each of the other said Defendants.

## GENERAL FACTUAL ALLEGATIONS.

11.     HARRIS began boxing at an early age, and has won some prominent fights, including three (3) consecutive National AAU Lightweight Titles in 1966, 1967, and 1968. HARRIS also fought against Muhammad Ali in an exhibition match.  HARRIS was the first

3

African American male to courageously represent the United States in the 1968 Mexico City Olympics, in the midst of the protests by African American athletes at those Olympics. *Not only* did HARRIS compete in those Olympics, but he *also* won the Gold Medal in the Olympic Lightweight Boxing Division for his country.

12.     HARRIS's notoriety and reputation for having strength in character, as a result of his boxing career and/or such Olympic participation and victory, helped him to develop minority business around the country.

13.     B&S Transport is a corporation, incorporated by HARRIS on or about 1977, in Canton, Ohio.

14.     B&S Transport is solely owned, managed and operated by HARRIS and his wife. HARRIS owns the majority of the stock in B&S Transport, and his wife owns the remaining shares in B&S Transport.  HARRIS is the founder of B&S Transport and, at all material times herein; HARRIS was the President of B&S Transport.

15.     B&S Transport is an African-American owned and operated corporation and a Minority owned business and is known as such throughout the country.   B&S Transport is one, of only a small number of minority/African-American owned and operated tire companies in this country.

16.     During its more than 30 years in business, B&S Transport has acquired an imputed racial identity as an African-American company.

17.     During the period between, approximately 1977 and 1979, B&S Transport became an authorized dealer of Firestone tires and continued as an authorized dealer thereafter.

18.     In the following years, B&S Transport began to develop a niche market in marketing and selling Bridgestone tires to the federal government and other governmental entities, utilizing HARRIS's credibility, reputation as an Olympic Champion and on the fact that B&S Transport was an African-American/Minority owned company.

4

19.  Bridgestone had not previously tapped the government and public sector market in any significant way. before B&S and HARRIS developed and refined the niche market of selling Bridgestone tires to the federal government and other governmental entities, utilizing HARRIS's credibility, reputation as an Olympic Champion and on the fact that B&S Transport was an African-American/Minority owned company,

20.  B&S Transport is a Blue Ribbon awarded company for outstanding performance. Such outstanding performance and HARRIS's reputation and credibility was instrumental in helping B&S Transport become successful as a Bridgestone tire distributor, and is very important to B&S Transport's continued ability to acquire and/or maintain its customers.

21.  On information and belief, on or about 1988, BS Japan purchased The Firestone Tire & Rubber Company for $2.6 Billion, thereby transforming the companies' combined operations into the world's largest tire and Rubber Company.

22.  After BSJ purchased On information and belief, B&S continued as an Bridgestone-Firestone authorized dealer and continued to utilize its excellent performance and its Minority Owned status to further develop and expand sales of Bridgestone-Firestone tires and related products to the United States government and to other governmental agencies.

23.  On information and belief, on or about April 1, 1991, Bridgestone Japan, acting by and through Bridgestone Tire, A division of Bridgestone/Firestone, Inc., both of which entities were  subsidiaries of, or a related companies to BSJ, entered into a Dealership Agreement with B & S Transport, Inc., which was partly in writing and partly oral (collectively the "Agreement").  The written portion of the Agreement included a written "Authorized Dealer Agreement" and a letter dated April 1, 1991 ("the April, 1991 letter").  A copy of the April 1, 1991 letter is attached hereto as **Exhibit No. 1**.

24.  The April, 1991 letter stated, in part, as follows:

5

"The purpose of this letter is to confirm the understandings between us concerning the basis on which we implement the Dealership Agreement as amended by this letter, (collectively, the "Agreement :").

In essence, you have proposed to aggressively seek "minority set-aside" business in order to obtain incremental sales and profits for both of us. For the purpose of this agreement, the term "minority set-aside business" shall mean the quota of passenger tires, light truck tires and truck tires reserved by federal, state, county, city governments and their respective agencies, public school districts and by public utilities for purchase from businesses that are owned and operated by individuals who are members of a minority. We agree that this is an opportunity worth exploring on the following basis.

First, we recognize that because of the nature of this business (including the relatively low number of available minority tire dealers/distributors, the relatively small percentage of "minority set-aside" participation in many contracts, and the relatively small number of "minority set-aside" supply opportunities available in any given geographical area), this venture will be most effective if it is not geographically restricted. However, Bridgestone reserves the right to refuse or decline any orders at its sole discretion.   We also recognize that for this reason it is not realistic for you to perform certain of the functions performed by a typical tire dealer, such as handling warranty adjustments, or providing services to purchasers of Bridgestone products.  In these respects, you will receive certain advantages that our other dealers don't have.  It must be understood that these advantages are to be used only to obtain incremental business for us and to genuinely assist your minority enterprise, and not to disrupt our existing distribution system by merely displacing sales which would otherwise be made by our current dealers or by Bridgestone itself.

Accordingly, we propose to proceed with orders being placed or rejected on a "deal-specific basis, extending to you the same "net store prices" and other prices, discounts and payment terms available to any other Bridgestone dealer.

At any time, and for any reason, either party may terminate this relationship upon 30 days' written notice, provided that each party shall honor all commitments incurred prior to the effective date of any such termination.  Upon such termination, all amounts due and owed Bridgestone are immediately payable.  The intent of this approach is that our business should – and can best – grow over the long term if it is based primarily upon our developing relationship, upon whatever success we have, and upon mutual good faith.

     25.    The written Agreement expressly agreed that the Agreement was subject a requirement of **"mutual good faith"**.

     26.    At all pertinent times, the parties contemplated that the Agreement would be subject to the implied covenant of good faith and fair dealing implied in all Agreements and

6

would be subject to all applicable laws of the United States and the State of Ohio.

27.     The parties orally agreed that each side would faithfully exercise good faith and fair dealing in honoring the terms, spirit and conditions of the Agreement.

28.     Thereafter, and pursuant to the Agreement, Bridgestone and B&S performed the promises contained in the Agreement consistently for decades, until recently, as more particularly alleged herein.

29.     During the past twenty-eight (28) years of doing business with Bridgestone, B&S Transport has brought a considerable amount of U.S. government and other business to Bridgestone through HARRIS's and B&S Transport's capability and reputation .

30.     The majority   tires -- roughly 3/4 - that B& S Transport buys are from Bridgestone.  Ninety-five percent (95%) of B&S Transport's current business is from its government customers.

31.     At all material times, Bridgestone knew that B&S Transport had numerous contracts with the government, some of which will not expire until October 2014, or early 2016. The value of B&S Transport's current multi-year contracts with the Defense Logistics Agency, which includes the above-described six (6) three (3) year agreements, and five (5) wheel and tire multi-year contracts, is in the amount of $12,765,732.00.  Such amount, while substantial, does not include the value of all of B&S Transport's other current one (1) year contracts with the Defense Logistics Agency ("DLA") or any of B&S Transport' other contracts with its other customers.  In addition, B&S Transport's sales and marketing efforts for procuring new orders would be on-going, but for the Termination Letter and the subsequent actions of Bridgestone as alleged herein.

32.     On or about February 28, 2013, Plaintiffs were contacted by Defendants' representatives, for the stated purpose of scheduling a meeting to meet with Plaintiffs to discuss

7

upgrades in the inventory management program and general future orders. Instead, on February 28, 2013 at the meeting, Plaintiffs' learned that the stated purpose of the meeting was false and a mere pretext for personally delivering to Plaintiffs notification that Defendants were suddenly terminating the long standing Agreement. Although the letter refers to discussions between Plaintiffs and Gary Clark and Landers Gaines "during the meeting" there was no such discussions. The meeting lasted only "minutes" and ended abruptly, with Plaintiffs being shocked, surprised and at a loss to understand the reasons for Defendants' actions.

33.    The letter which was hand delivered to Plaintiffs was dated February 28, 2013, the same day of the "meeting" and was addressed to Mr. Harris. The letter was on the letterhead of BATO and was signed by Kurt A. Danielson, President, Bridgestone Commercial Solutions. The letter purported to terminate B&S Transport as an Authorized Dealer of all Bridgestone and Firestone brand product lines, effective December 31, 2013 A copy of said letter (hereinafter the "Termination Letter") is attached hereto as **Exhibit No. 2**. The letter states, in part, the following:

> **"This letter is in follow up to your meeting on February 28, 2013 with Mr. Gary Clark and Mr. Landers Gaines to discuss the end of the longstanding relationship between B&S Transport, Inc. ("B&S Transport") and Bridgestone Americas Tire Operations, LLC ("Bridgestone"). This letter will confirm, as Gary Clark and Landers Gaines discussed with you during that meeting, that Bridgestone has decided to terminate B&S Transport as an Authorized Dealer of all Bridgestone and Firestone brand product lines ("Terminated Lines"), such Terminated Lines include passenger tires, light truck tires, truck tires, small and giant off-the road tires, industrial and agricultural tires, and tubes and flaps. As discussed, Bridgestone's reasons for termination includes Bridgestone's change in distribution and go to market solution strategies.**
>
> **Bridgestone will continue to ship tires until December 31, 2013. On January 1, 2014, B& S Transport will no longer be a Bridgestone Authorized Dealer**

8

**and will have until January 31, 2014 to process and complete all delivery receipts."**

34. At the time of the Termination Letter,

a. There was no good cause or valid reason for Bridgestone's threatened termination;

b. B&S Transport was in the middle of the aforementioned six (6) three (3) year contracts with Defense Logistics Agency;

c. Bridgestone has supplied tires to B&S Transport pursuant to such contracts; and

d. Bridgestone knew B&S Transport was in the middle of such contracts.

35. At the time of the Termination Letter,

a. B&S Transport was in the middle of additional contracts with Defense Logistics Agency, and other customers,

b. Bridgestone had routinely supplied tires to B&S Transport pursuant to such additional contracts, and

36. At the time of the Termination Letter, Bridgestone knew B&S Transport was in the middle of multiple additional contracts, some of which extended beyond the Contract termination date.

37. On numerous occasions following the Termination Letter, Bridgestone refused to fully support Plaintiffs' business, as agreed, including refusing to ship tires that Bridgestone knew that B&S had agreed in writing to supply to the government.

38. HARRIS and B&S Transport complained of Bridgestone's actions, including communicating with the office of Bridgestone's President, requesting critically needed support

9

and merchandise to satisfy B&S Transport's current contractual obligations with the federal government to ship tires.

39.     Bridgestone's President did not directly respond to Plaintiff's communications. Instead, on or about November 14, 2013, B&O Transport received a letter from Bridgestone Americas Tire Operations, LLC (BRIDGESTONE)'s Associate General Counsel, Jon A. Stanley, which states that BATO's President and CEO, "Mr. Minardi and BATO Senior Management remain supportive of BATO's decision to cancel B&S Transport, Inc. and thank B& S Transport, Inc. for its years as a Bridgestone dealer."

**FIRST CLAIM FOR RELIEF - VIOLATION OF 42 U.S.C. §§ 1981, BY RACE DISCRIMINATION IN VIOLATION OF EQUAL PROTECTION RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION**

40.     Plaintiff refers to and incorporates by reference paragraphs 4 through 39 set forth above as though they were fully set forth at length.

41.     This first Claim for Relief is brought pursuant to **the Civil Rights Act of 1866 (42 U.S.C., Section 1981, et seq.**) and the Fourth and Fourteenth Amendments of the **United States Constitution,** for the violation of the civil rights of Plaintiffs, B&S Transport and HARRIS.

42.     At all material times to this action, **Section 1981 of the Civil Rights Act of 1866 (42 U.S.C., Section 1981)** guaranteed that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts as is enjoyed by white citizens. The Civil Rights Act of 1991 amended 42 U.S.C., Section 1981, to provide that the term "make and enforce contracts" includes:

> **The making, performance, modification, and termination of contracts,**
>
> **and the enjoyment of all benefits, privileges, terms, and conditions**
>
> **of the contractual relationship**.

10

43.     At all material times to this action, 42 U.S.C. Section 1981 of the Civil Rights Act of 1866 (42 U.S.C., Sections 1981, 1983) provided redress for violations of constitutionally guaranteed rights, including, without limitation, rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment.

44.     Said constitutional and statutory provisions were and are for the purpose of protecting United States citizens, including each of the Plaintiffs, from being discriminated against by reason of their race, the race of a company's owners and officers, and/or by reason of the acquired racial identity of the company, by the conduct of entities or other persons, such as alleged.

45.     HARRIS is an African American United States Citizen and is within a protected class entitled to protections of the constitutional and statutory provisions alleged herein, including, without limitation, the Equal Protection Clause of the Fourteenth Amendment and the provisions of 42 U.S.C., Section 1981.

46.     B&S Transport is a corporation, founded by and principally owned by HARRIS, an African-American United State Citizen, and B&S Transport has acquired an imputed racial identity as an African-American company. At all material times B&S Transport was within a protected class entitled to protections of the constitutional and statutory provisions alleged herein, including, without limitation, the Equal Protection Clause of the Fourteenth Amendment and the provisions of 42 U.S.C., Section 1981.

47.     Over a 28-year period, utilizing HARRIS's reputation and B&S Transport's African-American and Minority Business, with Bridgestone's support, Plaintiffs originated, cultivated and developed a niche program of sales of Bridgestone tires to the government and, for almost three decades, B&S Transport was the only African-American Bridgestone distributor of Bridgestone's tires to the government, including the Department of Defense and related agencies.

11

48.     On information and belief, at all material times herein, Pomp's Tire Service, Inc. (hereinafter "Pomp's") I s a non African American, non minority, White owned and/or operated Bridgestone tire distributor.

49.     At all material times herein, other than B&S Transport, Pomp's, a non African-American, White owned and operated company, was the only, or primary other, Bridgestone distributor allowed by Bridgestone to engage in sales of Bridgestone Tires to the U.S. government and the DLA.

50.     Pursuant to the February 28, 2013 Termination Letter, Bridgestone terminated B&S Transport's Agreement and status as an Authorized Bridgestone Dealer, and for no valid stated reason, as more particularly alleged herein.

51.     At the time of the Termination Letter, B&S Transport was the only African-American Bridgestone distributor of Bridgestone's tires to the government, including the Department of Defense and related agencies.

52.     The Pomp's Bridgestone Dealership is a similarly situated company as B&S, in that Pomp's is the only, or primary other Bridgestone dealer engaged in shipping Bridgestone tires to the U.S. government, and the DLA, on the same or similar terms and basis as B&S.

53.     Defendants treated Pomps, a non-Black Bridgestone Dealership disparately and more favorably than it did B&S Transport, in that it terminated Plaintiffs' long standing Agreement and Dealership without any objective or performance-based cause, while at the same time allowing Pomp's, a non African-American company, non-minority, White owned company to continue its distribution of tires to the U.S. government and the DLA.

54.     At all material times, B&S Transport was a Blue Ribbon awarded company for outstanding performance and remains fully qualified to continue distributing tires to the government pursuant to the Agreement.

55.     Bridgestone's termination of B&S Transport's Agreement was based on the

African-American race of HARRIS and the racial identity of B&S Transport and was done with the intent to discriminate against Plaintiffs based on their race.

56.     In addition to the disparate and discriminatory treatment of B&S Transport as compared to Pomp's in terminating B&S Transport's Agreement, while not similarly terminating Pomp's distributorship and authorization to make sales to the government, Bridgestone engaged in additional acts of discrimination and disparity in treatment of B&S Transport as compared to similarly situated non-African-American Bridgestone Distributors, as alleged herein.

57.     During the months following the Termination Letter, Bridgestone has engaged in other acts of disparate treatment, including refusing to support B&S Transport's Agreement for sales, while continuing to support Pomp's sales to the government, despite the fact that Bridgestone's February 28, 2013 letter to B&S Transport states that "Bridgestone will support B&S as an authorized dealer until 12-31-13", and that "Bridgestone will continue to ship tires until 12-31-13".

58.     Subsequent to the Termination Letter, and due to the actions of Bridgestone, B&S has lost at least three (3) awards to Pomp's, a non African-American, non minority, White owned and/or operated Bridgestone distributor and, on information and belief the only Bridgestone distributor other than B&S Transport engaged in sales to the government. B&S lost said awards to Pomp's based on intentional race discrimination by Bridgestone, which included treating B&S Transport disparately and in a less favorable manner than Bridgestone treated Pomp's, including, without limitation, by extending special and lower prices and advance knowledge of upcoming bid prices to Pomp's, such that Pomp's offers for such awards of Bridgestone and/or Firestone combined tire **and** wheel assemblies are within $20 above the prices Bridgestone and/or Firestone are now giving B&S Transport **for just the tire part** alone.

59.     On or about April 10, 2013, Pomp's submitted a bid for Firestone tire number 156531 to DLA Land and Maritime at the price of $301.11, which bid was accepted by DLA

13

Land Maritime on or about 9/30/13, pursuant to Pomp's bid. The price for Firestone tire number 156531 that was in effect when Pomp's made its aforementioned bid to DLA Land Maritime was $352.12 as reflected by Bridgestone's Pricing List for 4/28/2012 until 4/30/2013.

60.     At the time that Pomp's made its aforementioned bid to DLA Land Maritime, it knew, based on advance knowledge received from Bridgestone that it was bidding for a contract that would take effect in October 2013.

61.     On or about September 30, 2013, DLA Land Maritime accepted Pomp's aforementioned bid to DLA Maritime. The price for Firestone tire number 156531 that was in effect for October 2013 was the exact price to the penny as Pomps' bid price for such tire -- $301.12, as reflected in Bridgestone's Pricing List for 8/1/2013 until 7/31/2014.

62.     In engaging in the above-described actions, Bridgestone gave more favorable pricing to Pomp's, a non-African-American company and provided Pomp's with notice of upcoming GSA Pricing months in advance of the upcoming contract so that they Pomp's underbid other suppliers, including B&S.

63.     The foregoing actions of Bridgestone, in terminating Plaintiffs' distributorship rights, while allowing Pomp's, a non-African-American, White Bridgestone distributor, that is newly involved in sales and marketing to the government, as compared to B&S Transport, who developed the government sales market for Bridgestone tires, was racially motivated and for the purpose and with the intent of discriminating against B&S Transport on account of the racial identity of B&S Transport and the race of HARRIS.

64.     Bridgestone intentionally discriminated against B&S Transport and HARRIS and treated Plaintiffs in a disparate and less favorable manner than it treated Pomp's, a non African-American company and such disparity in treatment was motivated by Bridgestone's intent to discriminate against Plaintiffs on the basis of the African-American identity of B&S Transport and on the basis of the African-American race of HARRIS.

14

65.     In doing the things alleged herein and in taking the foregoing actions, Defendants violated Plaintiffs' Constitutional and statutory rights, including the right to the equal protection of the laws guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United Sates Constitution and the provisions of 42 U.S.C., Section 1981.

66.     As a direct and proximate cause of the conduct of Defendants, and each of them, HARRIS and B&S Transport were deprived of their rights secured by law, including their 14th Amendment rights of equal protection, including their right to freedom from race discrimination, and were wrongfully denied the right to continue the Agreement.

67.     As a direct and proximate cause of Defendants' conduct, Plaintiffs have suffered damages including, without limitation, economic damages due to the loss of a long-standing distributor/franchise contract with Bridgestone and the consequential loss of contractual relations with the federal government, which is the cornerstone of Plaintiffs' business, such that the loss of those contractual relationships will virtually destroy Plaintiffs' business, as alleged herein; the loss of goodwill, client trust, confidence and competitive advantage;  damage to Plaintiffs' reputation and business credibility, and other damages, all according to proof.  In addition, Plaintiffs seeks an award of attorneys' fees pursuant to, but not limited to, 42 U.S.C. Section 1988.

68.     In doing the things alleged herein, Defendants acted willfully, intentionally, and with reckless and deliberate indifference to Plaintiff's constitutional and civil rights, for the illegal purpose of discriminating against Plaintiffs on account of race and the acquired African-American racial identity of B&S Transport, as an African-American owned company, and for the purpose of depriving HARRIS and B&S Transport of theirs constitutional and civil rights in violation of the law.  By reason of the nature of the conduct of Defendants, B&S Transport and HARRIS pray for exemplary and punitive damages against each of the Defendants in accordance with law, all according to proof.

## SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT

69.     Plaintiffs refer to Paragraph 4 through 39 herein above, as though fully set forth at length herein.

70.     On or about April, 1991, B&S Transport, Harris and the Firestone-Bridgestone entered into the Agreement, which is more particularly described hereinabove.

71.     The essential terms of the Agreement provided that:

1)     HARRIS and B&S would continue their efforts to develop marketing and sales to the federal government and HARRIS and B&S would go after 'minority set-aside' business aggressively, so as to result in incremental sales and profits for both parties;

2)     B&S would receive certain advantages that other dealers normally don't get, including that sales were **not geographically restricted**;

3)     B&S would obtain orders from its customers for Bridgestone Tires, and submit the sales order to Firestone/ Bridgestone, with orders being accepted or rejected on a deal by deal basis, and, once a deal was accepted Bridgestone would fully support the order by supplying the tires specified in the order on the terms set forth in the order;

4)     B&S Transport would be extended the same net state prices and other prices and discounts available to any other Firestone-Bridgestone dealer;

5)     B&S Transport would make timely payment to Bridgestone;

6)     The termination provisions of the Agreement would be subject to and express obligation of mutual good faith and would be subject to all applicable state and federal laws;

7)     The parties would abide in good faith with the terms and conditions set forth in the Agreement, including the mutual oral promises made by the parties

16

72.     At the time the parties entered into the Agreement, the parties knew and intended that the identities of B&S Transport and HARRIS were inextricably intertwined and the parties to the Agreement intended that the Agreement was intended to benefit HARRIS as well as B&S Transport and that HARRIS was a third-party beneficiary of the Agreement.

73.     At the time the parties entered into the Agreement, Defendants knew that Plaintiffs, were a small Minority-owned business and that they had put their reputation and credibility on the line and had already invested substantial sums of money in developing the niche business of sales to the federal government and the DLA, and would continue to do so throughout the Agreement.  Defendants knew and contemplated that full and timely performance of the Agreement in supporting and fulfilling orders obtained by B&S Transport was essential and critical to the successful development of sales to the federal government and to the successful operation and survival of Plaintiffs' business.   Accordingly, both parties knew or should have known that a breach of the Agreement would reasonably result in substantial consequential damages to Plaintiffs.

74.     Thereafter, and pursuant to the Agreement, B&S Transport has consistently, for almost three decades, fully performed all terms and conditions required of Plaintiffs to be performed under the terms of the Agreement.

75.     Bridgestone breached the Agreement in numerous respects, including, without limitation, as follows:

1)      On February 28, 2013, Defendants issued a letter/notice to Plaintiffs that Defendants were terminating the Agreement.

2)      The termination was not for good cause or any valid performance-based reason and was not done in good faith.

3)      On numerous occasions following the Termination Letter, Bridgestone refused to fully support and supply merchandise to B&S for ongoing orders,

17

some of which extended well beyond the date of the termination of the

Agreement, as agreed, including refusing to ship tires that Bridgestone knew

that B&S had agreed in writing to supply to the government, as more

particularly alleged herein; and

4) Bridgestone failed to abide by the implied covenant of good faith and fair

dealing.

76.     As a direct and proximate cause of the conduct of Defendants, and each of them, HARRIS and B&S Transport suffered damages, including, without limitation, the right to continue the Agreement,   the potential loss of a long-standing relationship and contracts with the federal government, which will virtually crash Plaintiffs' business, as alleged herein, loss of goodwill, client trust, confidence and competitive advantage, loss of  reputation and business credibility, and have suffered other damages, including, without limitation, lost profits and other economic losses, and will be caused to incur attorneys fees in the prosecution of this action, all according to proof.

## THIRD CLAIM FOR RELIEF – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

77.     Plaintiffs refer to Paragraph 4 through 39, Paragraphs  47 through 64 and Paragraphs 70 through 75 herein above, as though fully set forth at length herein.

78.     The written provisions of the Agreement expressly agreed that the Agreement was subject a requirement of **"mutual good faith"**.

79.     At all pertinent times, the parties contemplated and orally that the Agreement would be subject to the implied covenant of good faith and fair dealing implied in all Agreements and would be subject to all applicable laws of the United States and the State of Ohio.

80.     Pursuant to Ohio law, there is implied in every contract an implied covenant of

good faith and fair dealing which requires honesty in fact and reasonableness in the enforcement of the contract.

81.     Defendants breached the implied covenant of good faith and fair dealing, as more particularly alleged herein.

82.     Following the February, 2013 Termination Letter, Bridgestone embarked on a campaign calculated to sabotage and undermine B&S Transport's business with the federal government and the DLA, including millions of dollars in existing contracts that Bridgestone knew would not expire until long after the termination date specified in the Termination Letter and substantial potential future repeat business, by including, without limitation, refusing to support and supply the merchandise specified in the orders, attempting to divert business away from B&S Transport by giving advance knowledge and more favorable pricing to Pomp's and by the other wrongful acts described herein, all with the intent of damaging or destroying B&S Transport's customer relations with the government which was developed and established over many years.

83.     As an example of Bridgestone's bad faith and sabotage, subsequent to receiving the Termination Letter, Bridgestone has been refusing to supply B&S Transport with two (2) orders (one placed on July 31, 2013 and one placed on August 27, 2013) for Part Number 423-831, which tires B&S Transport needs to provide to the Defense Logistics Agency, pursuant to one of their 6 DLA 3 Yr Contracts:  October 26, 2011 Notice of Contract Award.

84.     In engaging in the actions alleged herein, Defendants were motivated by illegal and improper considerations, including, without limitation, the intent to discriminate against Plaintiffs by reason of their African-American race and because Bridgestone wants to do

19

business with non-African-American, White owned companies, like Pomp's, and further, on information and belief, Bridgestone desires or is trying to usurp the long standing business, including with the government, that B&S Transport has cultivated over almost three decades.

85.     As a direct and proximate cause of Defendants' conduct, Plaintiffs have suffered damages, as alleged, all according to proof at the trial of this action.

86.     In doing the things alleged herein, Defendants acted willfully, maliciously, intentionally, and in conscious disregard of Plaintiffs' rights and, by reason of the nature of the conduct of Defendants, B&S Transport prays for exemplary and punitive damages against each of the Defendants in accordance with law and all according to proof at the trial of this action.

### FOURTH CLAIM FOR RELIEF – PROMISSORY ESTOPPEL

87.     Plaintiffs refer to Paragraph 4 through 39, Paragraphs  47 through 64, to Paragraph 70 through 75,  and Paragraphs 78 through 84 herein above, as though fully set forth at length herein.

88.     On numerous and repeated occasions during their 28 year relationship, including, without limitation, during the period between 2011 and 2013 as more particularly alleged herein, Bridgestone promised B&S Transport that it would fully support and supply Bridgestone products to fill orders from B&S Transport's customers, including its primary customer, the federal government.

89.     In reasonable reliance on said promises, over a period of 28 years, Plaintiffs originated, cultivated and developed over many years, a niche program of sales of Bridgestone tires to the government, including the Department of Defense and related agencies and sold millions of dollars of Bridgestone tires to the mutual profit of Bridgestone and B&S Transport.

90.     At all material times, Bridgestone knew that B&S Transport had numerous contracts with the government, some of which will not expire until October 2014, or early 2016. The value of B&S Transport's current multi-year contracts with the Defense Logistics Agency,

which includes the above-described six (6) three (3) year agreements, and five (5) wheel and tire multi-year contracts, is in the amount of $12,765,732.00. Such amount, while substantial, does not include the value of all of B&S Transport's other current one (1) year contracts with the Defense Logistics Agency or any of B&S Transport' other contracts with its other customers.

91.     Pursuant to the history and long-standing practice, Bridgestone's knowledge of the above-described contracts and Bridgestone's promise to support B&S Transport by supplying the merchandise specified in said contracts Bridgestone expressly and impliedly repeated and confirmed the above described promises to B&S, by the following events.

92.     On or about January 11, 2011, Irvin Jackson, an employee of B&S Transport received an e-mail from Bridgestone's representative, Linda Alberstadt (hereinafter "Linda Alberstadt") regarding B&S Transport's Defense Logistics Agency bid(s), in response to his request for Bridgestone's pricing for tires for B&S Transport's bid for DLA's five (5) year contract. Attached to such email was:

a.     a Bridgestone Government Sales Approval to Bid Form for B&S Transport for Defense Logistics Agency from **8/2011-8/2016**, which contained pricing for Bridgestone;

b.     an e-mail from Landers Gaines (hereinafter "Gaines"), dated January 6, 2011 to Plaintiffs, regarding Bridgestone's pricing for B&S Transport **for the calendar years 2012-2016**; and,

c.     a price list for tires **for the calendar years 2012-2016.**

93.     On or about June 16, 2011, B&S received a letter from Helena W. Yarbrough, Associate General Counsel, to Bridgestone Americas Tire Operations, LLC, which states that:

> **as of the date of this letter, B&S Transport is an authorized dealer of Bridgestone and Firestone brand tires, and is an authorized government supply point for the sale of such tires to federal government agencies pursuant to their GSA contract.**

21

94.     Pursuant to Bridgestone's request(s) and B&S Transport's history of doing business with them, B&S Transport notified Bridgestone of their award of the aforementioned six (6) three (3) year contracts with Defense Logistics Agency, and also provided Bridgestone with copies of such contracts.   As reflected in the aforementioned emails and price lists, Bridgestone knew that B&S Transport was going to be bidding and potentially entering into a five (5) year contract Pursuant to such emails and price lists from Alberstadt, and Gaines.

95.     B&S Transport reasonably relied on Bridgestone's promises, based on the aforementioned emails and price lists, and notification of and/or receipt of B&S Transport's award of the aforementioned six (6) three (3) year contracts with Defense Logistics Agency, and based on the long standing history of Bridgestone supporting B&S Transport's orders, including the fact that during the period shortly prior to the Termination Letter, Bridgestone had supplied over two thousand (2,000) of such tires to B&S Transport pursuant to such October 26, 2011 Notice of Contract Award.

96.     At all material times herein, it was reasonably foreseeable to Bridgestone that B&S Transport and HARRIS would rely on the above-described promises made by Bridgestone and, in fact, Bridgestone knew that B&S Transport reasonably relied on Bridgestone's promises described herein.

97.     As a direct and proximate cause of Plaintiffs' detrimental reliance on the promises made by Bridgestone, as more particularly alleged herein, Plaintiffs sustained damages as alleged herein, which damages are all according to proof at the trial of this action.

## FIFTH CLAIM FOR RELIEF – TORTIOUS INTERFERENCE WITH CONTRACT AND WITH PROSPECTIVE ECONOMIC ADVANTAGE

98.     Plaintiffs refer to Paragraph 4 through 39, Paragraphs 47 through 64, to Paragraph 70 through 75,  and Paragraphs 78 through 84 and Paragraphs 88 through 96 herein above, as though fully set forth at length herein.

99.     At all material times herein, Bridgestone knew that B&S Transport's current

multi-year contracts with the Defense Logistics Agency, which includes the 6 DLA 3 Yr Contracts, and five (5) wheel and tire contracts, were valued at $12,765,732.00. Bridgestone also knew, that such amount, while substantial, did not include the value of all of B&S Transport's other current one (1) year contracts with the Defense Logistics Agency or any of B&S Transport' other contracts with its other customers and that The Defense Logistics Agency has many deployment orders with B&S Transport for Bridgestone tires all over the world.

100.    With full knowledge of Plaintiffs' above-described contractual and business relationships with the federal government, during the period between January, 2013 and the present, and on various other dates, well known to Defendants, including February 28, 2013, Defendants did each of the things alleged herein, all to the detriment and damage of Plaintiffs' business and to their existing contractual relationships.

101.    Defendants' conduct was, intentional, unjustified and unreasonable because the risk of Plaintiffs losing existing contracts and losing the benefit of their contractual relationships, including future business was readily foreseeable to Defendants at all material times herein.

102.    As a direct and proximate cause of Defendant's action, Plaintiffs' contractual relationships with B&S Transport's existing customers has been damaged and are threatened with destruction, as more particularly alleged herein above.    Plaintiffs sustained damages as alleged herein, which damages are all according to proof at the trial of this action.

103.    Defendants' conduct was willful, intentional, malicious and done for the specific purpose of injuring Plaintiffs and Plaintiffs' contractual relationships.    In committing the wrongful acts alleged herein, Defendants acted despicably, maliciously, unfairly, in bad faith, deceptively, and in conscious disregard of Plaintiff's known rights, and in violation of law, and by reason thereof, Plaintiffs pray for punitive and exemplary damages in an amount appropriate to set an example and punish Defendants, all according to proof.

## SIXTH CLAIM FOR RELIEF — FRAUD

104.     Plaintiffs refer to Paragraph 4 through 39, Paragraphs  47 through 64, to Paragraph 70 through 75,   and Paragraphs 78 through 84, Paragraphs 88 through 96, and Paragraphs 99 through 101 herein above, as though fully set forth at length herein.

105.     At the time of entering into the Agreement and on numerous and repeated  dates and times thereafter,   including, without limitation, on virtually each occasion when B&S Transport submitted and order to be supported and filled by Bridgestone, all of which dates are well known to Defendants, and which dates include January 6, 2011, January 11, 2011, June 16, 2011 and October 26, 2011, Bridgestone acting by and through its duly authorized agents, including, without limitation, Alberstadt and Gaines,   made the following material representations to Plaintiffs:

1)  Defendants made each of the representations set forth in the Agreement Agreement;

2)   That Bridgestone would fully support B&S Transport in supplying the Bridgestone products specified in B&S Transport's above-described contracts with the government, some of which will not expire until October 2014, or early 2016, including the above-described six (6) three (3) year agreements, and five (5) wheel and tire multi-year contracts, valued in the amount of $12,765,732.00.

3) That Bridgestone would fully support B&S Transport in supplying the Bridgestone products specified in B B&S Transport's other current one (1) year contracts with the Defense Logistics Agency or any of B&S Transport' other contracts with its other customers.

106.     At the time that the representations and promises alleged herein were made, said promises were made with no intention of performing them or of interpreting in good faith the terms and conditions of the promises and representations.

107.     At the time that the above-described representation was made, Defendants concealed their true fraudulent intent from Plaintiffs and thereafter Defendants breached said

24

promises as alleged herein.

108.    Each of said representations was false and Defendants knew that they were false when they were made.  The true facts were that, at the time of said representations, Defendants knew and deliberately concealed from Plaintiffs their intent to engage in the wrongful acts alleged herein.

109.    Defendants made said representations for the purpose of inducing Plaintiffs to rely on said promises and representations as true so that Plaintiff would continue engaging in the actions described herein, including developing a valuable niche of government business.

110.    Based on a 28-year business relationship, Plaintiff reasonably believed such promises and representations to be true, and they did justifiably rely on such promises in entering into the transactions alleged herein.

111.    At all material times herein, Defendants and each of them, knowing that such promises and representations were false, deceitfully made said representations for the purpose of deceiving Plaintiff and of inducing Plaintiff to rely on said promises and representations as true, so that Plaintiff would continue developing government business for Bridgestone Tires, which Bridgestone secretly intended to divert to others or usurp for itself. .

112.    As a direct and proximate cause of Defendant's action, Plaintiffs have sustained damages, as more particularly alleged herein above and which damages are all according to proof at the trial of this action.

113.    Defendants' conduct was fraudulent, willful, intentional, malicious and done for the specific purpose of damaging Plaintiffs.  In committing the wrongful acts alleged herein, Defendants acted despicably, maliciously, unfairly, in bad faith, deceptively, and in conscious disregard of Plaintiff's known rights, and in violation of law, and by reason thereof, Plaintiffs pray for punitive and exemplary damages in an amount appropriate to set an example and punish Defendants, all according to proof.

## RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays for relief including damages and judgment in their favor and against Defendants, and each of them, as prayed for in the respective Claims for Relief set forth in the Complaint; to include, without limitation, general and compensatory damages, for exemplary and punitive damages against each of the Defendants By reason of the nature of their conduct as alleged herein including for deliberate violations Of and conscious disregard of Plaintiffs' rights; for pre-judgment and post-judgment interest as allowed by law; for attorneys' fees; costs; and expenses.  Plaintiffs further equitable relief and injunctive as allowed under law, including such injunctive relief that be sought pending trial, and for all such further and other relief that the Court considers just and proper.

DATED:  August 4, 2014

## RULE 11 CERTIFICATION

The undersigned counsel for the Plaintiffs hereby certify that he has read the foregoing First Amended Complaint; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation

Respectfully Submitted,


/s/ Willie E. Gary, Esquire
WILLIE E. GARY, ESQ.,                          and     JAMES LEONARD BROWN, ESQ.
Fla. Bar No. 187843 - Pro Hac Vice                     CA Bar No. 40702 - Pro Hac Vice
GLENN CRICKENBERGER, ESQ.,                             5900 Wilshire Blvd., Suite 2645
Fla. Bar No. 40892 - Pro Hac Vice                      Los Angeles, CA 9003
Gary, Williams, Parenti, Watson & Gary, P.L.,          jameslbrownlaw@yahoo.com
221 E. Osceola Street
Stuart, Florida  34994
(772) 283-8260
weg@williegary.com
glenn@williegary.com
dpk@williegary.com


## DEMAND FOR JURY TRIAL

TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS:

NOTICE IS HEREBY GIVEN THAT Plaintiffs hereby demand a trial by jury of this

action of all issues so triable, pursuant to Rule 38(b), Federal Rules of Civil Procedure, and all

applicable Local Rules.


DATED:  August 4, 2014
Respectfully Submitted,

/s/ Willie E. Gary, Esquire
WILLIE E. GARY, ESQ.,                          and     JAMES LEONARD BROWN, ESQ.
Fla. Bar No. 187843 - Pro Hac Vice                     CA Bar No. 40702 - Pro Hac Vice
GLENN CRICKENBERGER, ESQ.,                             5900 Wilshire Blvd., Suite 2645
Fla. Bar No. 40892 - Pro Hac Vice                      Los Angeles, CA 9003
Gary, Williams, Parenti, Watson & Gary, P.L.,          jameslbrownlaw@yahoo.com
221 E. Osceola Street
Stuart, Florida  34994
(772) 283-8260
weg@williegary.com
glenn@williegary.com
dpk@williegary.com

# VERIFICATION

STATE OF OHIO   )
         ) ss
COUNTY OF STARK  )

I, RONNIE HARRIS, am an officer of B & S TRANSPORT, INC., an Ohio

Corporation. I and B & S TRANSPORT, INC. are both citizens of the United

States and residents of the State of Ohio. I am authorized to make this

verification on behalf B & S TRANSPORT, INC. I hereby declare under

penalty of perjury under the laws of the United States of America, pursuant to

28 U.S.C. Section 1746 that I have read the foregoing **FIRST AMENDED**

**COMPLAINT** and the factual allegations therein are true and correct, except

as to any matters which are therein stated upon information and belief, and as

to those matters, I believe it to be true.

Executed at    Navarre   , Ohio.


DATED: August 4, 2014   *Ronnie Harris*
           RONNIE HARRIS, Individually and,
           as a Duly Authorized Officer of
           B & S TRANSPORT, INC.